UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RON BENVENISTI,

                    Plaintiff,

        - against -

THE CITY OF NEW YORK and ELIZABETH
GLAZER, individually and in her
Official capacity,

                    Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

04 Civ. 3166 (JGK)

MEMORANDUM OPINION
AND ORDER

**JOHN G. KOELTL, District Judge:**

By letter dated June 25, 2007, the plaintiff renews his
request to supplement the record on appeal in this case with
certain documents he obtained through a Freedom of Information
Act request.  Because there is no indication that this letter or
the plaintiff's prior letters, dated June 19 and June 22, 2007,
were ever sent to the defendants, the Court attaches those
letters to this Order and forwards the letters to the
defendants.

The plaintiff provides no basis for the Court to reconsider
its prior Orders, dated June 21 and June 22, 2007, denying the
plaintiff's request to supplement the record on appeal with
these documents.  The plaintiff's letter does, however, make
clear that the plaintiff "did not find these documents in the
original court record."  Based on this representation, the
plaintiff has failed to satisfy his burden pursuant to Rule
10(e)(2) of the Federal Rules of Appellate Procedure to

1

establish that these documents were before the Court in the course of its proceedings leading to the judgment under review and were mistakenly omitted from the record.  (See Order at 2, June 22, 2007.)  Therefore, the plaintiff's request to supplement the record pursuant to Rule 10(e)(2) is **denied with prejudice.**

The plaintiff also has not shown any basis for the Court to reconsider its denial of the plaintiff's request for relief pursuant to Rule 60 of the Federal Rules of Civil Procedure. (See Order at 3-4, June 22, 2007.)  The plaintiff now attributes the absence of these documents from the summary judgment record to attorney error.  The plaintiff's present allegations, however, fail to establish the sort of exceptional circumstances necessary to warrant Rule 60(b) relief based on his attorney's alleged conduct.  See, e.g., Alvarado v. Manhattan Worker Career Ctr., No. 01 Civ. 9288 (CBM), 2003 WL 22462032, at *3 (S.D.N.Y. Oct. 30, 2003).  Moreover, the plaintiff fails adequately to establish that the documents that the plaintiff wishes to include in the record establish that he has a meritorious claim or provide this Court with any basis to reverse its decision granting the defendants' motion for summary judgment.  See, e.g., id. at *4.  Finally, the plaintiff's unsworn allegations in his letter to the Court do not constitute admissible evidence sufficient to support a claim for Rule 60(b) relief.

The plaintiff has established no basis for this Court to request a remand from the Court of Appeals to consider the plaintiff's request for Rule 60(b) relief.  On the contrary, for all of the reasons stated above and for the reasons stated in the Court's June 22, 2007 Order, the plaintiff's request for relief pursuant to Rule 60(b) is, again, **denied**.

SO ORDERED.

Dated:  New York, New York
       June 25, 2007

                            John G. Koeltl
                 United States District Judge

June 25, 2007

<u>From:</u>  Ron Benvenisti
        128 Hearth Court East
        Lakewood, New Jersey 08701


<u>To:</u>    United States District Court
        Southern District of New York
        500 Pearl Street
        New York, New York 10007

        <u>ATTN:</u> DC Docket #: 04-cv-3166
             Benvenisti vs. the City of New York


The reason for the appeal was the existence and omission of these documents. The appeal was granted based on the request to include them.

The documents I have requested to be submitted show that the defendant acted contrary to New York City Rules & Regulations. The documents show that my complaint was not merely a "workplace grievance" but the reporting of a violation of City Rules as mandated by law. The law guarantees anonymity and confidentiality in order to protect the complainants Constitutional rights. I was reporting a legitimate violation which is not only the right, but the obligation of every citizen, in the employ of the Government or not.

The documents which I am requesting for submission clearly describe those rules in detail, which the defendants acted in violation of, and which I complained through the appropriate channels about.

I did not find these documents in the original court record. These documents should have been included because of their obvious and primary relevance to the argument. This may be attributed to error, mistake, oversight or exceptional failure of due diligence. I personally instructed my attorney to request this information on several occasions for inclusion it in the record. Since, as the court is well aware, by having already cited and ordered my attorney regarding errors, mistakes and willful refusal to perform required duties on several occasions including my attorney's refusal neither to perform any services nor to have any communication regarding the case, despite the order of the court.

I have been informed by the Pro-Se offices at both courts of how to submit these documents and followed their instructions precisely. How is it possible that the court grants an appeal which, as stated in the appeal, is based solely upon the inclusion of these documents not previously in the record, yet moves not to include them?

The reason for inclusion is the criticality of these documents as evidence. They show that the defendant acted contrary to prevailing rules, regulations and official policy at the time that my complaint was mandated by law, and therefore protected speech. Furthermore, they were omitted in the first place by mistake, error or oversight or willful disregard as observed by the court and documented in the record.

As a result of these errors, mistakes or willful omission I was forced to obtain these documents on my own via FOIA request for inclusion in the record.

I am therefore seeking relief from the court, to grant admission and inclusion of these documents, considering the exceptional circumstances surrounding the case, in particular the breakdown of relationship between the plaintiff and plaintiff's attorneys, and the failure due to the error, mistake or omission of the court and/or of my attorney to represent the plaintiff according to the rights of the plaintiff and the order of the court to do so including the acquisition and submission of this easily obtainable and critical evidence and to make available to the plaintiff these and other records as so ordered by the court in order for the appeal, which was granted by the court and was requested solely to present these documents as evidence, to proceed.

Thank You,

Ron Benvenisti
917-709-1228
FAX: 732-612-1100

# FAX COVER SHEET

| FAX NUMBER | 12128057912 |
| --- | --- |
| FROM | Ron Benvenisti |
| DATE | 2007-06-22 20:10:15 GMT |
| RE | Motion To Include Omitted Documents |

## COVER MESSAGE

From:
Ron Benvenisti
128 Hearth Court East
Lakewood, NJ 08701
917-709-1228
FAX: 732-612-1100

GET FREE ONLINE FAX DELIVERY FROM eFAX
WWW.EFAX.COM

June 22, 2007

<u>From:</u>  Ron Benvenisti
       128 Hearth Court East
       Lakewood, New Jersey 08701

<u>To:</u>   United States District Court
       Southern District of New York
       500 Pearl Street
       New York, New York 10007

       <u>ATTN:</u> DC Docket #: 04-cv-3166
             Benvenisti vs. The City of New York

       Under advice from the Court's Pro-Se office, in response to Judge Koeltl's order dated June 21,
       2007:

       I am writing this letter in accordance with Rule 60: "Relief from Judgment or Order" of the
       Federal Rules of Civil Procedure.

       This is a motion to include, under the above said Rules of Civil Procedure, documents which
       were not in the record as newly discovered evidence. These are the same documents submitted to
       the court on June 20, 2007 as part of the original request to include as supplemental records to the
       court. These are the same documents obtained from the New York City Office of Management
       and Budget via FOIA, which was denied without prejudice pursuant to Federal Rules of
       Appellate Procedure, Rule 10(e) by the Order of Honorable John Koeltl dated June 21, 2007.

       According to 10 (e) (2) "If anything material to either party is omitted from or misstated in the
       record by error or accident, the omission or misstatement may be corrected and a supplemental
       record may be certified and forwarded: (C) by the court of appeals."

       The appellant was acting under the precise instructions from Appeals Court Pro-Se Office Clerk,
       Robert Rodriguez to submit said documents which were omitted due to error and/or accident
       according to Rule 10 (e) (2).

       I hereby request that the court reconsider the order to deny inclusion based on Rule 10 (e) (2). If
       the court will not reconsider under Rule 10 (e) (2), I hereby request the court to allow the
       documents to be included under Rule 60: "Relief from Judgment or Order" of the Federal Rules
       of Civil Procedure

       Thank You,

       Ron Benvenisti

       Ron Benvenisti
       917-709-1228
       FAX: 732-612-1100

June 19, 2007

From:   Ron Benvenisti
        128 Hearth Court East
        Lakewood, New Jersey 08701

To:   United States District Court
      Southern District of New York
      500 Pearl Street
      New York, New York 10007

      ATTN: DC Docket #: 04-cv-3166
            Benvenisti vs. The City of New York

Attached are documents to be submitted as part of the supplemental record.
The documents were obtained from the New York City Office of Management and
Budget via FOIA request and represent the thrust of the appeal.

Please include into the record immediately as the due date for the Appellant's brief and
appendix is June 28, 2007, of which these documents will be appended.

Notify the Appellant at the above address and/or via telephone at:
917-709-1228 or 732-364-7930

This letter and filing of records is according to the instruction of the Appeals Court Pro-
Se Office Clerk, Robert Rodriguez. Mr. Rodriguez so instructed the Appellant on June
19, 2007 after numerous voice messages were left by the Appellant beginning on June 6,
2007 until June 19, 2007, when the Appellant called the General Number of the Appeals
Court Pro-Se Office and asked to speak with Mr. Rodriguez.

Thank You,

Ron Benvenisti

Ron Benvenisti

June 19, 2007



The City of New York
**Office of Management and Budget**
59 Maiden Lane, New York, NY 10038-4502

Mark Page
Director

MEMO TO:   Agency Heads

FROM:   Mark Page

DATE:   March 8, 2002

SUBJECT:   FY 2003 Executive Budget

---

In the February Financial Plan the Mayor presented a detailed plan to close the budget gap that the City faces for the upcoming fiscal year. The gap closing program for 2003 includes significant actions to be taken by City agencies, the State and Federal governments and the City's labor unions, after taking into account transitional financing.

Given the size of the gap closing program and the current uncertainty in achieving all of our goals, an additional savings program of $500 million will be developed to offset any of these potential shortfalls. We expect that this program will be published with the Executive Budget as a contingency program.

In order to achieve an additional savings program of this size, agencies are being asked at this time to review their budgets and to submit additional reduction proposals equal to 7.5% of their 2003 City funded budgets. The Board of Education and uniformed agencies are requested to prepare reduction proposals equal to 2.5% of their 2003 City funded budgets. Agencies must submit proposals to achieve their targets. These targets are meant to provide the Mayor with options.

The setting of a target is important for the purpose of identifying the consequences of reductions in each agency and comparing the impact across agencies. This process will allow the administration to make informed decisions on specific policy options. These targets do not indicate that final decisions have been made about the level of reductions that will be imposed on each agency.

The target for your agency is included in the attached package. OMB will be working closely with you in developing your proposals. Your proposals should reach the target in 2003 and should generate recurring savings in 2004 and beyond.

As a general guideline, you must submit proposals that meet your target in total. The target can be met by reductions in personal service costs or other than personal services.  The programs and areas to be cut and the resulting level of services that will be provided should be indicated in the descriptions of your proposals.  Your proposals should be prioritized in order of preferred implementation.  (One should reflect the top ranked proposal.)

In developing your proposals, you should not be constrained by achieving headcount savings only through attrition.  We still intend to put in place early retirement and severance programs as the preferred method of reducing headcount.  For purposes of meeting your target you should assume whatever personnel changes may be necessary.

Your  proposals to meet your agency target **must be returned to OMB no later than Wednesday, March 20, 2002.**

The City's financial management system (FMS) provides the capability to submit your proposals electronically rather than via paper forms.

Instructions on the submission of your proposals are attached.

c:  Mayor Michael R. Bloomberg
    Deputy Mayor Daniel Doctoroff
    Deputy Mayor Patricia E. Harris
    Deputy Mayor Carol A. Robles-Roman
    Deputy Mayor Dennis M. Walcott
    Peter J. Madonia, Chief of Staff
    Vincent A. LaPadula, Senior Advisor

## Submission of Proposed Reductions

Please note, the security features of FMS ensure that all proposals and data reflected on the relevant windows remain completely in the domain of the agency until submitted.  OMB does not have access to the information until you formally submit the information.

To formally submit and transmit your proposed reductions to OMB. open the **FPAS** window to display a complete list of your initiatives and individually flag those initiatives to be transmitted to OMB.

Before submitting your proposals, please check that the proposals reference existing budget structure and that sufficient funds exist in the base condition to accommodate the proposed reduction.  If the structure or funds are found to be deficient after the PEG submission to OMB, these will be returned to you with a request for substitute proposals.  Also please make sure that each proposed reduction has been ranked in order of preferred implementation on **FPGA.** Number 1 should reflect the top ranked proposal.  If you submit 10 proposals, the ranking should be listed as 1 through 10.

Reduction proposals are to be completed and submitted electronically **to OMB by March 20, 2002.**  In FMS these proposals should be entered in the Executive 03 Plan file.

A **separate transmittal letter**, which confirms that the proposals have been submitted electronically and which also provides a **summary** of your PEG targets, is requested.  This should be sent to 75 Park Place.  It is not necessary to detail the individual submissions on the transmittal letter since these will be transmitted electronically.

The FY 2001 Agency Expense Reduction Instructions issued in December 1999 should be used for reference.  If further guidance is required, please contact your OMB analyst.



## *The City of New York*
## *Office of Management & Budget*

75 Park Place – New York, New York 10007
(212) 788-5900

**Mark Page**
**Director**

MEMO TO: Agency Heads

FROM: Mark Page

DATE: May 15, 2002

SUBJECT: Agency Budget Controls

---

The City finds itself in a period of particularly tight resources for providing public services. Most recently our personal income tax payments for April came in substantially below our forecast and our forecasts of revenue and expenses for FY 2003 and beyond don't look any better.

It becomes particularly important for agencies to be able to manage themselves as efficiently as possible. The ending of the Vacancy Control Board and OTPS Review Committee was intended to streamline personnel and purchasing actions. However, as Peter Madonia pointed out in his April 4 memo, along with making it easier for agencies to do business, it is vitally important expenditures be carefully planned and spending controlled so that operations will remain within budgeted resources.

For some time the City has had a monthly budget allocation and tracking system which, if carefully maintained, can give both agency management and OMB a serviceable mechanism for maintaining financial control. Formerly known as the Quarterly Allocation System, it is now known in FMS as the Spending Plan. This system is a vital part of the City's financial control. It is the responsibility of each agency's management to see that resources are properly allocated by month and that spending for both PS and OTPS is strictly controlled within those resources. OMB must have the ability to ascertain that this is occurring, within each agency and on a City-wide basis. Maintaining the Spending Plan is a shared responsibility vital to all of us.

Monthly spending plans were established at the beginning of this fiscal year for each agency and have been modified to recognize changes approved in subsequent quarterly financial plan submissions. On a monthly basis, all agencies have been required to analyze and explain variances that exist between actual spending and planned spending; and after each financial plan submission agencies are required to update their spending plan.

Equally important is the monitoring of revenues - both categorical and miscellaneous revenues - that agencies are responsible to collect. Similar to the monitoring of spending, revenue monitoring is also required on a monthly basis and after each financial plan updates of agency revenue plans are required.

Various spending and revenue reviews and updates are currently underway and additional requests will be forthcoming:

1) Spending Plan Update - reflecting changes recognized in the April Financial Plan modification - was due back to OMB by May 3, 2002.

2) FY 2003 OTPS Spending Plan - creating the initial OTPS spending plan for 2003 based on the Executive Budget - is currently underway and is due back to OMB by May 15, 2002.

3) FY 2003 Executive Budget Revenue Plans/Grant Information - creating the initial revenue flows for Miscellaneous and Grant Revenues for 2003 based on the Executive Budget - is currently underway and is due back to OMB by May 24, 2002.

4) April Variance Report - comparing April actuals to the Spending Plan updated for April Financial Plan changes – is being distributed this week based on the timely completion of the Spending Plan Update (paragraph 1). The April Variance Report is due back to OMB by May 21, 2002.

5) FY 2003 PEG Monitoring Plan – creating the initial plan to track key PEG initiatives in the 2003 Executive Budget – is being distributed this week and is due back to OMB by June 3, 2002.

6) FY 2003 Personal Service Spending Plan - creating the initial PS spending plan for 2003 based on the Executive Budget - will be distributed the week of May 20, 2002.

All of the above are necessary to ascertain that spending actions taken by your agency are consistent with both the planned assumptions for the remainder of fiscal year 2002 and the planned assumptions for fiscal year 2003, as well as to know whether revenues are being collected as planned. Your agency's ability to manage and live within budgeted resources will be judged using these monitoring tools. Your agency's ability to provide timely and accurate explanations and updates is a key determinant in maintaining this management flexibility.

OMB staff will provide guidance and assistance, as required, in completion of the above.

c:     Marc Shaw
       Peter Madonia



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N.Y. 10007

## EXECUTIVE ORDER NO. 52

### October 9, 2001

## RESTRICTIONS UPON AGENCY EXPENSE BUDGET ADMINISTRATION

WHEREAS, the terrorist attack of September 11, 2001 has had an impact upon the City's economy; and

WHEREAS, although certain direct costs of such attack will be reimbursed by the federal and State governments, the City must also address the unanticipated expenditures and reduction in City revenues that have resulted from the attack; and

WHEREAS, it is the responsibility of the City, and in particular of the Mayor, under State law and the City Charter, to ensure the maintenance of a balanced budget and sound fiscal practices, and to set aside necessary reserves in furtherance of such responsibility;

NOW, THEREFORE, by the power vested in me as Mayor of the City of New York, it is hereby ordered as follows:

Section 1. Establishment of necessary reserves. Pursuant to section 106 of the City Charter, it is hereby determined that necessary reserves of $1,000,000,000 ($1 billion) shall be set aside from agency allotments in the Fiscal Year 2002 expense budget of the City. The Office of Management and Budget (OMB) shall prepare detailed agency schedules for implementation of such reserves. This section shall apply to all agencies for which units of appropriation for personal services and other than personal services (OTPS) are included in such expense budget.

Section 2. Restriction on agency personnel actions. No mayoral agency shall hire any personnel or fill a vacancy in any position except upon the written approval of OMB. OMB may approve such action only upon written submission by the agency proposing such action and a determination by OMB that such proposed action is either:

(a) Directly related to public health or safety;

(b) Necessary to enhance or maintain the City's revenue base, or to prevent additional City expenditures;

(c) Required by law;

(d) Necessary for continuation of critical agency functions; or

(e) Funded by state, federal, other non-City or capital funds.

OMB shall consult with the Office of the Corporation Counsel as necessary in considering agency submissions pursuant to this section.

Section 3. Restriction on agency other than personal service funding commitments. No mayoral agency shall commit funds in excess of $50,000 for OTPS except as set forth in this section. Any such commitment shall require approval of an OTPS Review Committee, which shall consist of representatives of the Office of Management and Budget, the Office of Operations and the Mayor's Office of Contracts.   Such committee may approve such commitment only upon written submission by the agency proposing such commitment and a determination by such committee that such proposed commitment meets the criteria set forth in paragraphs (a) through (e) of Section 2 of this Order.   Such committee shall consult with the Office of the Corporation Counsel as necessary in considering agency submissions pursuant to this section.

Section 4. Agency head implementation. Heads of mayoral agencies shall promptly take all necessary steps to ensure that their agencies are in compliance with the terms of this Order.

Section 5. Rule of construction. References to "agencies" and "agency heads" in this Order shall be deemed to include boards, commissions and other entities where such boards, commissions and entities administer agency budgets.

Section 6. Effective Date. This Order shall take effect immediately.

Rudolph W. Giuliani
Mayor

## OTPS Review Committee (ORC) Protocol

### What is the ORC?

The ORC, established pursuant to Executive Order No. 52 (October 9, 2001), attached, consists of representatives of the Office of Management and Budget (OMB), the Office of Operations (OPS) and the Mayor's Office of Contracts (MOC).

### What Agency actions are subject to prior approval by the ORC?

Any proposed action that will commit agency OTPS funds in excess of $50,000 is subject to prior approval by the ORC. **Exception:** The ORC has exercised a blanket approval of **all** actions that will commit agency funds for which the source of funding is **100% Capital**. Such actions should continue to be processed pursuant to established procedures.

### How is ORC approval obtained?

- The agency must assign a single staff person to serve as the Agency Contact for all submissions to ORC. That person should be at a sufficiently high level to represent the entire agency (e.g., Agency Chief Contracting Officer, Deputy Commissioner, or other comparable title).

- The agency must complete and submit an **original** and **3 copies** of the form entitled "Request for Approval by the OTPS Review Committee (ORC) to Commit Agency OTPS Funds in Excess of $50,000", attached, signed by the **Agency Head**, to the **Mayor's Office of Contracts, Attention: ORC** at 253 Broadway, 9th Floor, New York, New York 10007. Submissions that are incomplete (e.g., do not include the Agency Contact; do not include an original and 3 copies; are not signed by the Agency Head; do not include an "Agency ORC ID#" and/or other required information) will not be considered and the Agency will be so notified. When the agency subsequently makes a complete submission for the proposed action, the agency should check the box "Re-Submission" in the "Agency ORC ID#" box on the form.

- The ORC will consider the agency's proposed action in terms of the criteria set forth in Executive Order No. 52. If the ORC has questions or requires further information, a staff person will notify the Agency Contact designated on the form. Based on its review, the ORC will either approve or disapprove the proposed action.

### What happens after ORC approval has been obtained?

- The approved ORC form serves as the agency's "ticket" for further processing of the proposed action, pursuant to established procedures. In particular:

  - **Proposed Procurement Action Subject to Approval by MOC** –  MOC's approval will be contingent on its receipt of the original approved ORC form for the proposed procurement action.

  - **Proposed Procurement or Other Action Subject to Registration by the Comptroller -** Registration will be contingent on inclusion of the original approved ORC form in the registration package for the proposed action. Covered submissions to the Comptroller's Office that do not include the approved ORC form will be returned to the agency without being registered and will be deemed withdrawn by the agency.

### What happens if ORC approval is not obtained?

- OMB will run daily reports from FMS to monitor agency compliance with the ORC approval process. Where an agency has not complied with that process, OMB will freeze the agency's entire OTPS budget necessitating ORC approval for **all** of the agency's OTPS funding commitments, regardless of dollar value.

| Agency | *Agency 3/4 letter abbreviation + 4 digit sequential ( ☐ Re-Submission) Agency tracking # | (ORC Use ONLY) |
|---|---|---|

**Agency Contact**  Name _____  Title _____  Location _____
Phone ( ) _____  Fax ( ) _____  e-Mail _____

# Request for Approval by the OTPS Review Committee (ORC)
## to Commit Agency OTPS Funds in Excess of $50,000

- **Type of Proposed Action**

☐ Procurement - Contract (PIN _____) (Contract # _____)
   __ New Award(s)   __ Renewal Award   __ Amendment/Change Order   __ Encumbrance
☐ Procurement – Purchase Order   (PO# _____)
   __ IT Small Purchase __ Requirements Contract (__ DCAS __ NYS) __ Other (Specify_____)
☐ Voucher for Miscellaneous Expenditure  (VME# _____)
☐ Real Property Lease or License
☐ Utilities or Phone Service
☐ Other (Specify_____)

- **Description of Proposed Action** (Include purpose, scope, parties and the term of the contract or other agreement; if an Emergency Procurement pursuant to Charter Section 315, so indicate.)

☐ __ additional page(s) attached

- **Justification for Proposed Action (Check all that apply)**
☐ Directly related to public health or safety
☐ Necessary to enhance or maintain the City's revenue base, or to prevent additional City expenditures
☐ Required by law
☐ Necessary for continuation of critical agency functions
☐ Funded by state, federal, other non-City or capital funds

- **Explain the basis of each justification cited above.** (Include any adverse consequences of not implementing the proposed action.)

☐ __ additional page(s) attached

- **Dollar Amount of Proposed Action  $ _____**
Unit(s) of Appropriation: _____  Budget Code(s): _____  Object Code(s): _____
Cost (Amounts in 000s)

| Funding Source | FY '01 | FY '02 | FY '03 | FY '04 | FY '05 – ' | Total | |
|---|---|---|---|---|---|---|---|
| Capital | $ | $ | $ | $ | $ | $ | ( __%) |
| Expense | | | | | | | |
| - City | $ | $ | $ | $ | $ | $ | ( __%) |
| - State (Specify        ) | $ | $ | $ | $ | $ | $ | ( __%) |
| - Federal (Specify        ) | $ | $ | $ | $ | $ | $ | ( __%) |
| Other (Specify        ) | $ | $ | $ | $ | $ | $ | ( __%) |
| **Total** | **$** | **$** | **$** | **$** | **$** | **$** | **(100%)** |

- **How Proposed Action Will be Funded**    ☐ Uncommitted OTPS Funds
   ☐ De-encumbrance of (Specify _____)

This is to certify that this proposed action complies with the criteria set forth in Executive Order No. 52 (October 9, 2001) and that I approve this proposed action.
**Agency Head Signature** _____  Date __/__/__

| **ORC Disposition** ☐ **Approved** ☐ **Disapproved**  **Initials_____**  **Date __/__/__** |
|---|



THE CITY OF NEW YORK
OFFICE OF THE MAYOR
NEW YORK, N Y 10007

MEMO TO:  The City Council,

FROM:     Marc V. Shaw, Deputy Mayor

DATE:     January 3, 2002

SUBJECT:  2003 Preliminary Budget

On December 4, 2001 the City submitted its 1st Quarter Financial Plan modification which focused on ensuring that the fiscal year 2002 budget remained in balance after taking into account the significant costs and major economic changes brought on by the events of September 11. This modification recognized those changes and implemented actions that maintained the City's General Reserve at $200 million and brought the City's Budget Stabilization Account to $375 million.

This year's budget is in balance, yet out-year budget gaps of $3.6 billion, $4.0 billion and $3.9 billion exist in fiscal years 2003, 2004 and 2005. The City's focus must now move to the fiscal year 2003 budget. As the Mayor indicated in his inaugural address, the current economic climate requires that "all parts of city government do more with less."

Closing a budget gap of $3.6 billion in 2003 requires that agency actions of at least **$1.1 billion** be identified over and above the agency actions already identified in the 1st Quarter Plan. In order to achieve savings of this magnitude, all agencies with the exception of the Board of Education and the uniformed agencies are requested to prepare budget reduction proposals equal to 20% of their 2003 City funded budgets. The uniformed agencies and the Board of Education are requested to prepare budget reduction proposals to meet two target levels of reductions -- equaling 5% and 10% of their 2003 City funded budgets.

The Mayor has asked that the City Council, as well as other Elected Officials, join him in these efforts to reduce their budgets by 20%. The City Council's participation is vital as we continue to balance the budget and ensure the City's recovery from the recent tragedy.

The target reduction is included in the attached package

An Early Retirement Program has been proposed as part of the Gap Closing Program in the 1st Quarter Financial Plan and is currently under discussion. If Early Retirement legislation is enacted into law, the savings generated from the program can be applied to meeting your agency's target. A low replacement rate in backfilling positions vacated via the Early Retirement Program is an important tool to meet your target and to assure the Program is cost-effective.

Your proposals **should be returned to OMB no later than January 14, 2002.**

The City's financial management system (FMS) provides the capability to submit your proposals electronically rather than via paper forms.

Instructions on the submission of your proposals are attached.

c: Mayor Michael R. Bloomberg

## Submission of Proposed Reductions

Please note, the security features of FMS ensure that all proposals and data reflected on the relevant windows remain completely in the domain of the agency until submitted. OMB does not have access to the information until you formally submit the information.

To formally submit and transmit your proposed reductions to OMB, open the **FPAS** window to display a complete list of your initiatives and individually flag those initiatives to be transmitted to OMB.

Before submitting your proposals, please check that the proposals reference existing budget structure and that sufficient funds exist in the base condition to accommodate the proposed reduction. If the structure or funds are found to be deficient after the PEG submission to OMB, these will be returned to you with a request for substitute proposals. Also please make sure that each proposed reduction has been ranked in order of preferred implementation on **FPGA**. Number 1 should reflect the top ranked proposal. If you submit 10 proposals, the ranking should be listed as 1 through 10.

Reduction proposals are to be completed and submitted electronically **to OMB by January 14, 2002**. In FMS these proposals should be entered in the Jan 03 Plan file.

A **separate transmittal letter**, which confirms that the proposals have been submitted electronically and which also provides a **summary** of your PEGs compared to the target, is requested. It is not necessary to detail the individual submissions on the transmittal letter since these will be transmitted electronically.

The FY 2001 Agency Expense Reduction Instructions issued in December 1999 should be used for reference. If further guidance is required, please contact your OMB analyst.



The City of New York
**Office of Management and Budget**
75 Park Place • New York, New York 10007-2146
Telephone: (212) 788-5900 • Fax: (212) 788-6300

**Mark Page**
*Director*

To:     Agency Heads

From:   Mark Page

Date:   October 28, 2002

The City's tax revenue outlook has deteriorated substantially since budget adoption last June for both the current fiscal year and for fiscal year 2004. The current downturn in the City's financial sector is particularly damaging to the revenue outlook as this sector is the direct and indirect source of a substantial part of City revenues. As a result you are asked to further reduce expenditures of City funds in your agency's budget in an amount equal to 4% in fiscal year 2004 and half of that amount, or 2% in the current fiscal year 2003. A reserve of that amount, in addition to the targeted 7.5% reduction, will be implemented in the City's Financial Management System to restrict spending in PS and OTPS units of appropriation. Reductions in spending are to be permanent. This target will apply to all City agencies although funding for uniformed and pedagogical employees is exempted.

Recognizing that the permanent reduction in spending which the City must achieve will require a reduction in workforce and that lay-offs must be avoided to the extent possible, a freeze on all new hires is also imposed, effective immediately. As of Tuesday, October 29, 2002 any new hires will be subject to specific approval by OMB. Specific procedures and grounds for extraordinary exceptions to this prohibition on new hires will be available from OMB and should be obtained from your OMB contact.

The 2% reduction in agency spending, annualizing to 4%, will be reflected in the financial plan modification to be published in November. Agencies should develop the programmatic impact of this reduction with their OMB contact. This programmatic plan is due at OMB by close of business on Monday, November 4, 2002.

cc: Mayor Michael R. Bloomberg
    Deputy Mayor Daniel Doctoroff
    Deputy Mayor Patricia E. Harris
    Deputy Mayor Carol A. Robles-Roman
    Deputy Mayor Marc Shaw
    Deputy Mayor Dennis M. Walcott
    Peter J. Madonia, Chief of Staff
    Vincent A. LaPadula, Senior Advisor



*The City of New York*
*Office of Management & Budget*
75 Park Place – 6th Floor
New York, New York 10007

Mark Page
Director

MEMO TO: Agency Heads

FROM: Mark Page

DATE: October 3, 2003

SUBJECT: November 2003 Financial Plan

As you are aware in the first 18 months of this administration each successive
economic forecast brought down expected revenues. Resources available for
current services have actually contracted while uncontrollable costs for pension
and health benefits, Medicaid and debt service have more than used up any
revenue growth. There is reason to be proud that, in spite of a 17 thousand
reduction in the City-funded workforce and spending cuts in City funds
of \$2.7 billion, services are generally as good or better than they were on
January 1, 2002: a major testament to what imagination and hard work can do in
the face of necessity to do more with less. Although the economic outlook
appears somewhat better, we are still faced with substantial increases in
uncontrollable costs and a forecast gap for next year of over \$2 billion.
Unfortunately this means a renewed effort to reduce City-funds spending,
identifying new ways to do more with less and continue to build a more
streamlined and effective City government which will enable us to again publish a
plan for balancing next year as we must do in January, 2004 for the year
beginning July, 2004.

The most recent Financial Plan of June 30, 2003 projected a balanced budget for
fiscal year 2004 and budget gaps of \$2.0 billion in fiscal year 2005, \$3.2 billion in
fiscal year 2006 and \$3.3 billion in fiscal year 2007.

The Mayor has asked that an additional savings program of \$300 million in the
current fiscal year be developed as a first step towards addressing the fiscal year
2005 projected gap and also to provide available reserves in fiscal year 2004 if
required to meet the uncertainty in achieving all of our current year goals. He has
directed OMB to work with agency commissioners to implement an annually
recurring program that lowers spending or identifies alternative revenue sources.

Agencies are asked to detail how they would sustain a 3% percent reduction in
City-funds expenditures in the current, 2004, fiscal year as a next step to

addressing the 2005 gap. Particular attention needs to be paid to reducing hiring planned for the balance of this fiscal year. The current partial hiring freeze needs to be maintained or intensified with a replacement target of no more than one new hire for each two new vacancies. Please set forth with your reduction proposals the lower authorized headcount you expect to be at by June 30, 2004. Continued downsizing of expenditures will require continued downsizing of the workforce. Attrition without backfilling now can give us a financial step toward balance in the future. Also, importantly, it will preserve flexibility for expenditure cuts which may be required to achieve 2005 balance while hopefully avoiding the pain to individuals and disruption to City services of additional lay-offs. The Department of Education is requested to prepare a reduction proposal of a smaller magnitude reflecting their legal mandate for maintenance of effort. Agencies must submit proposals to achieve their targets. These targets are meant to provide the Mayor with options.

The setting of a target is important for the purpose of identifying the consequences of reductions in each agency and comparing the impact across agencies. This process will allow the administration to make informed decisions on specific policy options. These targets do not indicate that final decisions have been made about the level of reductions that will be imposed on each agency.

The target for your agency is included in the attached package. OMB will be working closely with you in developing your proposals. Your proposals should reach the target in 2004 and should generate recurring savings in 2005 and beyond.

As a general guideline, you must submit proposals that meet your target in total. The target can be met by reductions in personal service costs or other than personal services. The programs and areas to be cut and the resulting level of services that will be provided should be indicated in the descriptions of your proposals. Your proposals should be prioritized in order of preferred implementation. (One should reflect the top ranked proposal.)

Your proposals to meet your agency target **must be returned to OMB no later than October 20, 2003.**

The City's financial management system (FMS) provides the capability to submit your proposals electronically rather than via paper forms.

Instructions on the submission of your proposals are attached.

c: Mayor Michael R. Bloomberg
   Deputy Mayor Daniel Doctoroff
   Deputy Mayor Patricia E. Harris
   Deputy Mayor Carol A. Robles-Roman
   Deputy Mayor Marc Shaw
   Deputy Mayor Dennis M. Walcott
   Peter J. Madonia, Chief of Staff
   Vincent A. LaPadula, Senior Advisor

## Submission of Proposed Reductions

Please note, the security features of FMS ensure that all proposals and data reflected on the relevant windows remain completely in the domain of the agency until submitted. OMB does not have access to the information until you formally submit the information.

To formally submit and transmit your proposed reductions to OMB, open the **FPAS** window to display a complete list of your initiatives and individually flag those initiatives to be transmitted to OMB.

Before submitting your proposals, please check that the proposals reference existing budget structure and that sufficient funds exist in the base condition to accommodate the proposed reduction. If the structure or funds are found to be deficient after the PEG submission to OMB, these will be returned to you with a request for substitute proposals. Also please make sure that each proposed reduction has been ranked in order of preferred implementation on **FPGA.** Number 1 should reflect the top ranked proposal. If you submit 10 proposals, the ranking should be listed as 1 through 10.

Reduction proposals are to be completed and submitted electronically **to OMB by October 20, 2003.** In FMS these proposals should be entered in the November 05 Plan file.

A **separate transmittal letter,** which confirms that the proposals have been submitted electronically and which also provides a **summary** of your PEG targets, is requested. This should be sent to 75 Park Place. It is not necessary to detail the individual submissions on the transmittal letter since these will be transmitted electronically.

The FY 2001 Agency Expense Reduction Instructions issued in December 1999 should be used for reference. If further guidance is required, please contact your OMB analyst.